UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-20957-MORENO/LOUIS

EDWARD MEDEIROS,

Plaintiff,

v.

NCL (BAHAMAS) LTD.,
MANDARA SPA (CRUISE II), LLC,

     Defendants.

                                 /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** comes before the Court upon Defendant NCL (Bahamas) LTD's Motion for Summary Judgment (ECF No. 49), Defendant Mandara Spa (Cruise II), LLC's Motion for Summary Judgment (ECF No. 50), and Plaintiff Edward Medeiros' Motion for Partial Summary Judgment on Claim of Apparent Agency (ECF No. 51). These matters were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge, for all pretrial matters (ECF No. 78). These Motions were fully briefed. Upon consideration of the pertinent parts of the record and being otherwise fully advised in the premises, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment on Claim of Apparent Agency (ECF No. 51) be **DENIED**. The undersigned further recommends, that Defendant NCL's Motion for Summary Judgment (ECF No. 49) be **GRANTED in part and DENIED in part** and Defendant Mandara's Motion for Summary Judgment (ECF No. 50) be **GRANTED in part and DENIED in part** as follows.

## I.   BACKGROUND

Plaintiff Edward Medeiros took a cruise with his girlfriend, Samantha Tomassi, onboard the *Norweigian Dawn* owned and operated by NCL (Bahamas) LTD ("NCL") in April of 2018 (ECF No. 51-1 at 3, ¶ 15). On the afternoon before disembarkation, Mr. Medeiros went to the Mandara Spa aboard the ship owned and operated by Mandara Spa (Cruise II), LLC ("Mandara") for a massage. The massage was administered by Cecilia Lalnunthari, an employee of Mandara. Although Plaintiff does not remember the exact type of massage he requested, he testified that he did not request a "deep tissue massage" and a "Swedish massage" sounded more familiar. Pl.'s Dep. (ECF No. 51-4 at 15-16).

During the course of the massage, Lalnunthari pressed her elbow into the back of Medeiros neck, at which point Medeiros told her it was causing pain and asked her to stop. Pl.'s Dep. (ECF No. 51-4 at 14:16-22). Plaintiff described the pain he felt during the massage as an eight out of 10. Pl.'s Dep. (ECF No. 51-4 at 46:4-7). Immediately after the massage Medeiros described his pain as a two out of 10. Pl.'s Dep. (ECF No. 51-4 at 46:8-23). However, as time passed, Medeiros reported that his pain continued to get worse. The day after the cruise he went to an urgent care and was seen by a doctor. Pl.'s Dep. (ECF No. 51-4 at 50:3-11). After six months of treatment, Medeiros was advised he would need surgery on his spine. Pl.'s Dep. (ECF No. 51-4 at 63-64). Medeiros underwent an anterior corpectomy at C6 with fusion with anterior instrumentation from C5 to C7.

Prior to being permitted to board a ship, passengers must agree to the terms and conditions contained within NCL's ticket contract (ECF No. 49 at ¶ 49). Section 8 of the ticket contract pertains to independent contractors (ECF No. 49-3).  Sub-section b states:

> **(b) Other Independent Contractors:** The Guest recognizes that the persons providing other personal services offered on the vessels, including but not limited to, hairdressers, manicurists, personal trainers, and/or massage therapists are

> independent contractors who work directly for the Guest, and that the Carrier shall not be held liable for any loss or injury arising from the performance of such services.

Although Plaintiff boarded the *Dawn*, he testified at deposition that he was never presented with this ticket contract nor did he sign such a contract. Pl.'s Dep. (ECF No. 51-4 at 94).

The spa facilities aboard the *Dawn* are owned and operated by Mandara. Mandara is a spa concessionaire that services multiple cruise lines, including NCL. The Concessionaire Agreement between NCL and Mandara states that Mandara is an independent contractor (ECF No. 49-2). Mandara has been NCL's spa concessionaire for 15 years.

Mandara employees wear uniforms that are provided by Mandara, except for a nametag provided by NCL that bears the NCL logo along with the employee's name. Plaintiff's Mot. (ECF No. 51 at ¶ 7). NCL advertises the Mandara spa services, among other services, via a video that played in passenger cabins during Plaintiff's cruise. The video shows a Mandara spa employee wearing a name tag with the NCL logo. Plaintiff's Mot. (ECF No. 51 at ¶ 4).

Upon electing to receive services in the Mandara Spa aboard the *Dawn*, clients are presented with a Spa Intake Form (ECF No. 49-4). The form asks the client for background personal and health information such as name, occupation, levels of stress, pain or soreness, amount of sleep per night, and specific areas requiring attention (ECF No. 49-4). At the bottom of the form clients are required to sign stating that they understand and agree that the facilities and services offered by Mandara Spa LLC involves risk, that the client has provided all relevant health information, that the client was seeking all spa services by his own free will, and that he assumed all risks. Additionally, the Spa Intake disclaimer released and discharged Mandara Spa LLC and all of its affiliates, subsidiaries, employees, directors, officers, agents, landlords, representatives, successors and assigns from any claim arising out of or relating to the spa services (ECF No. 49-4). Below the line on which the client signs is another line requiring the client's initials which

indicates the client understands and acknowledges all spa services are provided as a convenience and the client accepts them at his own risk (ECF No. 49-4). Plaintiff completed and signed such a form (ECF No. 49-4).

Mandara requires its massage therapists to be licensed as massage therapists before working for Mandara (ECF No. 50 at ¶ 1). Mandara's hiring policies require prospective employees to be interviewed and their credentials checked prior to being hired (ECF No. 50 at ¶ 5). After Mandara checks a prospective employee's credentials and references, it invites the prospective employee to what it calls a "training facility" (ECF No. 50 at ¶ 6). As stated by Mandara, the purpose of the training facility is not to re-train individuals in massage therapy, rather they are to learn "specific techniques for add-on services." (ECF No. 50 at ¶ 7).

Ms. Lalnunthari's personnel records indicates that she received a certification in massage therapy in her home country of India (ECF No. 50-2). However, at deposition, Mandara's corporate representative could not affirm whether in fact Ms. Lalnunthari's references and credentials had been checked. (ECF No. 73-2 at 103-05). Ms. Lalnunthari's CV lists knowledge of "Swedish" therapy and lists the name of three references (ECF No. 50-3).

In support of his claim, Plaintiff advanced the expert opinion of Steve Capellini (ECF No. 73-1).[1] Mr. Capellini is a licensed massage therapist with decades of experience performing massage and spa treatments, developing protocols in the field of massage therapy, and training approximately ten thousand therapists in massage therapy (ECF No. 73-1 at 2). He reviewed the relevant materials in this case and opined that Ms. Lalnunthari's training of 20 hours was below the industry standards in the spa industry. He opined that the level of training demonstrated by Ms. Lalnunthari was more on par with an "interested laymen." (ECF No. 73-1 at 3-4). Additionally, he

---

[1] Defendants moved *in limine* to exclude the expert testimony of Capellini. The Motion is resolved by separate order, denying Defendants' challenge to his opinion pursuant to Fed. R. Evid. 702.

opined that the policies, procedures, and training employed by Defendant Mandara to its massage therapists was below the standard of care in the industry because it emphasizes sales rather than the safety of clients (ECF No. 73-1 at 4). Finally, he opined that Ms. Lalnunthari applied an overly aggressive "deep-tissue" massage, that she was under-trained to perform such a maneuver, and that such a maneuver should not be administered as part of a "Swedish massage." (ECF No. 73-1 at 4).

Plaintiff's Amended Complaint alleges claims for negligence (Count I, against NCL and Count V, against Mandara); negligent failure to warn (Count II, against NCL and Count VI, against Mandara); intentional failure to warn (Count III, against NCL and Count VII, against Mandara); and vicarious liability for acts of Mandara based on its apparent agency of NCL (Count IV, against NCL).

## II.    ANALYSIS

### A.    Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252).

In considering a motion for summary judgment, the Court must evaluate the evidence and draw all inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. A court will not weigh conflicting evidence at this stage of the proceeding. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). If the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

When faced with cross-motions for summary judgment, a court must consider each motion

on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Feliz v. United Parcel Servs., Inc.*, No. 16-21042-CIV-Scola, 2017 WL 5634304, at * 4 (S.D. Fla. May 10, 2017) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.2d 1328, 1331 (11th Cir. 1984)). The standard of review is the same as when considering a single motion for summary judgment, i.e., a grant of summary judgment is not warranted unless one of the parties demonstrates it is entitled to judgment as a matter of law, on facts that are not genuinely disputed. *Id*. (citing *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)).

### B.      Discussion

#### 1.   Defendant Mandara's Motion for Summary Judgment

##### a.   Plaintiff's Claim of Negligence

Defendant Mandara's Motion for Summary Judgment contains two overarching arguments. First, Mandara avers that it should be granted summary judgment because it acted reasonably under the circumstances and therefore cannot be held liable for negligence. Second, it avers that Plaintiff has failed to adduce competent evidence that it was on notice of the risk-creating condition alleged by Plaintiff. Mandara further avers that Plaintiff has not properly plead its negligence claim because Mandara claims the Amended Complaint contains only a "laundry list" of purported breaches and urges dismissal for this pleading deficiency. However, Mandara fails to explain why Plaintiff's allegations are insufficient to plead negligence. Plaintiff's negligence claim advances several theories of negligence, individually addressed below.

###### i.      Plaintiff's Claim of Negligent Hiring

Plaintiff asserted against Mandara a claim of negligent hiring. In order to prove a claim for negligent hiring, a plaintiff must show that 1) the employee was incompetent or unfit to perform the work, 2) the employer knew or reasonably should have known of the particular incompetence

or unfitness, and 3) the incompetence or unfitness was a proximate cause of the plaintiff's injury. *See Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016). To satisfy the second element,[2] a plaintiff must show that "the employer was put on notice of the harmful propensities of the employee/contractor/agent." *Id.* (internal alterations omitted).

With respect to the element of notice, Mandara claims in its Motion that Plaintiff has presented no evidence that it was on notice of Ms. Lalnunthari's purported harmful propensities.

Defendant advances the following facts in support of its motion: Prior to being offered a position to work onboard a cruise ship, prospective employees are required to attend training and the prospective employee must already be certified in massage therapy (ECF No. 50 at 2). Ms. Lalnunthari received training and massage therapy certifications in her home country of India prior to working with Mandara and had experience in Swedish Massage, the type of massage Plaintiff requested (*Id.*). Ms. Lalnunthari listed three references on her resume and prior to being interviewed employees' credentials and certifications are verified (*Id.*).

Plaintiff does not dispute the fact that Ms. Lalnunthari had a certification or licensure but does dispute that the training that formed the basis for that certification or licensure was sufficient. In order to demonstrate this, he points to the report of his purported expert, Steve Capellini. Specifically, Mr. Capellini states in his report that "[h]iring Cecilia Lalnunthari after this level of training is not up to industry standards." (ECF No. 73-1 at 4). Although Defendants have previously averred that such an opinion is irrelevant because there is no legal standard for massage

---

[2] Defendant Madara's Motion does not challenge the evidence of causation or fitness, focusing only on the second element of Mandara's notice. As such, the Court has focused its analysis on this element of negligent hiring. *Clark v. Coats & Clark*, 929 F.2d at 607-08 (limiting its analysis to the elements specifically challenged by movant in its motion for summary judgment); *Z Indus. USA, LLC v. Circuitronix, LLC*, No. 17-CV-60727-UU, 2018 WL 3412854, at *9 (S.D. Fla. June 20, 2018) (establishing that on review of a motion for summary judgment, district courts cannot concoct arguments neither made nor advanced by the parties).

therapists on cruise ships, advisory guidelines and recommendations are admissible as bearing on the standard of care in determining negligence. *See Cook v. Royal Caribbean Cruise Lines, LTD.*, Case No. 11-CV-20723-GOODMAN, 2012 WL 1792628 at *5 (S.D. Fla. May 15, 2012). Capellini's opinion regarding the extent of time it takes to train someone is thus relevant and serves to create a genuine dispute as to a material fact of whether Defendant Mandara was negligent in its hiring practices.

Plaintiff also states that although Ms. Lalnunthari listed three references, Defendant could not attest to the fact that Ms. Lalnunthari's references or credentials were ever in fact verified. Dep. of Elizabeth Junco (ECF No. 73-2 at 103-05). Defendant Mandara's corporate representative stated at deposition that she did not know whether Ms. Lalnunthari's credentials had been checked, although she noted the absence of checklist in Ms. Lalnunthari's personnel folder that would indicate they had been checked (*id.*). Viewing the evidence in the light most favor to the non-movant, the Court cannot infer that Defendant in fact verified the references before hiring. *See Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002).

In Reply, Defendant Mandara states that Plaintiff has not pointed to any evidence to demonstrate that, at the time of hiring, Mandara knew or should have known that the masseuse was unfit to perform the duties of a massage therapist. However, Plaintiff's expert's report focuses on the question of whether Defendant Mandara *should have known* that her licensure was deficient and whether it was reasonable to believe it was not.

Therefore, Plaintiff has adduced sufficient evidence to survive summary judgment on his negligent hiring theory of negligence premised on Defendant's failure to investigate Ms. Lalnunthari's licensure, references, and other credentials, which bears on the disputed element of notice.

ii.      **Plaintiff's Claim of Negligent Retention/Monitoring**

Negligent retention occurs where the employer knows or should have known of an employee's unfitness and fails to take further action such as investigating, discharge, or reassignment. *See Witover*, 161 F. Supp. 3d at 1148. The elements for negligent retention and negligent monitoring are essentially the same, the only difference between them being the time at which the employer became aware of the harmful propensities; as such the undersigned will analyze them together. *See Grimm v. City of Boca Raton*, No. 15-80608-CIV-MARRA, 2015 WL 4483974, at *8 (S.D. Fla. July 22, 2015).

Defendant Mandara claims that there is no evidence that Defendant knew or should have known of Ms. Lalnunthari's unfitness at any point during her employment prior to the alleged incident. Defendant Mandara avers that there is no evidence of any complaints against Ms. Lalnunthari during her tenure with Mandara. It asserts that therefore there is no evidence that it acted unreasonably in retaining Ms. Lalnunthari nor that it had notice, constructive or actual, of information that called in question her fitness as an employee. Finally, it asserts in its Statement of Material Facts that it performs periodic quality control checks by sending certified trainers to board various cruise ships to ensure spa personnel are performing properly (ECF No. 50 at 3).

Plaintiff avers that Defendant Mandara cannot argue that it did not know of Ms. Lalnunthari's unfitness because it chose to close its eyes to her incompetence and never conducted a single evaluation of Ms. Lalnunthari while she was employed. Elizabeth Junco, the corporate representative for Mandara was asked whether Ms. Lalnunthari ever went through any evaluation while she was employed by Mandara. To which she responded: "No. I didn't see one in the personnel file. I don't know if she went through one or not. It could be that it's not in the personnel file." Dep. of Elizabeth Junco (ECF No. 73-2 at 107:9-16). Viewing the evidence in the light most

10

favorable to the non-movant, there is a genuine issue as to whether Defendant Mandara knew or should have known of Ms. Lalnunthari's unfitness despite failing to evaluate her at any time during her tenure. Defendant Mandara claims that it was reasonable at all times in the retention of Ms. Lalnunthari because it never received complaints or negative feedback regarding this masseuse prior to Plaintiff's massage. However, a reasonable jury could find the opposite, that it was unreasonable to retain Ms. Lalnunthari given the absence of evidence that it made inquiries into her licensure and credentials. As such, Plaintiff has adduced sufficient evidence to survive summary judgment on his negligent retention theory of negligence premised on Defendant's failure to evaluate and monitor Ms. Lalnunthari.

### iii.    Negligent Training

Defendant claims that it should be granted summary judgment on Plaintiff's theory of negligence premised on negligent training. An employer is liable for the reasonably foreseeable damages resulting form the negligent training of its employees and agents. *See Avrett v. Festival Fun Parks, LLC*, No. 15-80526-CIV, 2016 WL 193805, at *5 (S.D. Fla. Jan. 15, 2016). Defendant Mandara claims that it cannot be held liable for negligent training because it never provided training to its employees in massage therapy, stating that certification in massage therapy is a prerequisite to employment with Mandara. In his Response, Plaintiff refutes Defendant's position with testimony of Defendant Mandara's corporate representative.

Ms. Junco, Mandara's corporate representative, testified that during the hiring process massage therapists are invited to Mandara's "training academy" where they are instructed and tested on various "services" provided by Mandara. Dep. of Elizabeth Junco (ECF No. 73-2 at 98-100). Specifically, Ms. Junco stated:

> "So what they would really learn at the training academy is sort of a style that's specific to our company, that would – when they go on board a ship there's a menu

and they do – you know, it would be specific to the company insofar as okay, you start laying on – you start the massage laying on your stomach, for example. And then, you know, I don't know exactly where they start, but you start in the legs or you start in the back and then you – you do so many minutes in the back and the arms and the legs, and then you turn over, things of that nature. You add products, you add, you know, hot stones, if you will. They already know these things, but they are taught how to specifically do them within the criteria that the company sets forth."

Dep. of Elizabeth Junco (ECF No. 73-2 at 101:1-18). Despite Defendant Mandara's insistence that it is entitled to judgment on this claim because it provides no training to its employees in massage therapy, the evidence does not support Mandara's position. Moreover, Plaintiff's negligent training theory here contends that Mandara's reliance on pre-hiring training is unreasonable under the circumstances, relying again on his expert's opinion that the training Ms. Lalnunthari received fell below industry standards. Defendant is not entitled to summary judgment on this negligence theory.

### b. Plaintiff's Claim of Negligence Based on Failure to Warn

Defendant Mandara moves for summary judgment on Plaintiff's claim of negligence based on failure to warn (Count VI). A cruise line's duty to warn extends to known dangers which are not apparent and obvious. *See Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014). Defendant Mandara claims in its Motion that Plaintiff has adduced no evidence that Mandara knew or should have known that the masseuse that performed his massage posed a risk-creating condition for Plaintiff or any other passenger visiting the Mandara spa. It points to the absence of any evidence that this masseuse ever had complaints against her of prior substantially similar incidents alerting Mandara to the existence of any potential risk-creating conditions associated with Ms. Lalnunthari.

Plaintiff claims that Defendant Mandara failed to warn him that the massage he was to undergo had the potential to cause serious neck and/or spine injuries. To prove that Defendant

Mandara was on notice of this risk Plaintiff points to five incidents that were reported based on interrogatories it served upon Mandara and NCL and one incident that was outside the scope of the interrogatories but that he uncovered himself.

Plaintiff alleged that Defendant Mandara was on notice that its employees were performing massage maneuvers that they were inadequately trained to perform, resulting in injuries to its clients. He identifies a series of complaints made in the five years preceding his incident:

1. Robert Nelson – May 21, 2013 aboard Norwegian Breakaway – passenger injured during massage which caused spine injury involving a disc herniation at L5-S1 and drop foot syndrome. Resulted in a Complaint being filed.
2. Melissa Chastain – March 5, 2015 aboard Norwegian Getaway – passenger injured during massage which caused spine injury involving a screw from a prior surgery being dislocated and resulting in nerve impingement and necessitating a revision surgery. Resulted in a Complaint being filed.
3. Lynn Portnoff – October 28, 2015 aboard Norwegian Sun – passenger injured during a massage which resulted in neck pain and bruising over the shoulders and thoracic spine.
4. Sonja Yoder – November 1, 2015 aboard Norwegian Jewel – passenger injured during a massage which resulted in pain and bruising on her back; during the massage, just as Plaintiff here, Ms. Yoder asked Defendant's masseuse to apply less pressure.
5. Stephanie Carvalho – November 13, 2017 aboard Norwegian Getaway – passenger injured during massage which resulted in bruising on her back.
6. Agostino Romano – December 5, 2017 aboard Norwegian Breakaway – passenger injured during a massage when Defendant's masseuse applied excessive force which resulted in a back injury.

Plaintiff's Resp. (ECF No. 73 at 15). Defendant avers in its Reply that the complaint by Robert Nelson should not be considered because it is outside the window of the discovery ordered compelled by the Court. Additionally, it avers that the other five incidents are insufficient to defeat a motion for summary judgment because they are not substantially similar. The undersigned disagrees, in part. Defendants moved *in Limine* to preclude introduction of these prior incidents of passenger injuries at trial. The undersigned held a hearing on the matter and entered an Order denying in part and granting in part Defendants' Motion (ECF No. 98).

In that Order, the undersigned found that with regards to Portnoff, Yoder, and Carvalho,

13

the proffered evidence showed only that those individuals complained of bruising following a massage administered by a Mandara employee. There has been no evidence produced that any of these three passengers alleged the massage was improperly performed, or that the masseuse employed a technique or maneuvers that he should not have. Nor did any of these three incidents result in serious injury, requiring medical treatment or surgery. The evidence advanced about each of these three incidents was insufficient to put Defendants on notice of the specific defect or alleged danger by Plaintiff, or the magnitude of that defect or danger. *See Acevedo v. NCL (Bahamas) Ltd.*, 317 F. Supp. 3d 1188, 1193 (S.D. Fla. 2017).

However, the other three, Romano, Nelson, and Chastain, by contrast, allegedly sustained significant injuries, for which the respective plaintiffs have filed formal complaints seeking relief for Defendants' misconduct. According to Defendant's Answer to Interrogatories, Mr. Romano reported that he "sustained a lower back injury after a Deep Tissue Massage" causing "lumbar pain radiating down his left leg with left foot numbness." (ECF No. 73-5 at 6). Mr. Romano's incident occurred in December 2017, less than six months before Plaintiff's injury. Defendant similarly disclosed an injury sustained by Ms. Chastain, who complained of injuries caused by a "chiropractic maneuver" performed by a Mandara massage therapist. Ms. Chastain filed suit on June 3, 2016 against NCL and Mandara Spa (Hawaii), LLC for the injuries she claimed occurred on May 5, 2015, and for which she required surgery. (ECF No. 73-8 ¶ 17). Finally, with respect to Mr. Nelson, Plaintiff advances a complaint he filed in May of 2014, alleging serious injuries, including disk herniation and "drop foot syndrome," sustained during a deep tissue massage he received on a NCL cruise in May 2013. Defendant Mandara argues that the Court should not consider Mr. Nelson's incident because it occurred beyond the three-year period (preceding Plaintiff's injury) the Court used to limit the scope of discovery. This is not determinative of

admissibility, though one of the inquiries into substantial relevance is remoteness; there is no bright-line rule however for the determination of whether evidence of prior incidents are not close enough in time to the incident to be considered relevant evidence of notice. *Cox v. Royal Caribbean Cruises, Ltd.*, No. 10-22232-CIV, 2012 WL 13036848, at *2 (S.D. Fla. Mar. 14, 2012) (denying motion *in limine* to preclude admission of evidence of similar incident 29 months before incident at trial).

Whether these three prior incidents are sufficient to put Mandara on notice of the risk-creating condition alleged depends on the circumstances. A single prior incident is sufficient to place a cruise line on notice of a dangerous condition. *See Milbrath v. NCL Bahamas, Ltd.*, No. 1:17-CV-22071-UU, 2018 WL 2036081, at *4 (S.D. Fla. Feb. 28, 2018) ("the Court believes that the conditions surrounding the two incidents are similar enough to allow a jury to draw a reasonable inference concerning a defendant's actual or constructive knowledge of an allegedly dangerous condition.") (citing *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985)). Collectively, the evidence advanced by plaintiff is sufficient to survive a motion for summary judgment as a jury may draw therefrom a reasonable inference concerning Defendant Mandara's actual or constructive knowledge of the danger presented by the massages it offered to passengers. *See id.*

### c.  Plaintiff's Claim for Intentional Failure to Warn

Finally, Defendant Mandara moves for summary judgment on Plaintiff's claim of intentional failure to warn (Count VII). Plaintiff's complaint alleges that Mandara intentionally failed to warn of the danger and potential for injury despite actual and constructive knowledge of the dangers and risk of injury from massages like that provided to Plaintiff (ECF No. 10 at 15). Plaintiff demands punitive damages for this intentional failure to warn.

In admiralty law a plaintiff must demonstrate intentional misconduct in order to recover punitive damages. *See Bodner v. Royal Caribbean Cruises, Ltd.*, No. 17-20260-CIV, 2018 WL 4047119, at *5 (S.D. Fla. May 8, 2018)(reasoning that the rule of the Eleventh Circuit *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997) remains the applicable maritime standard requiring a showing of intentional conduct for recovery of punitive damages); *Bonnell v. Carnival Corp.*, No. 13-CV-22265, 2014 WL 12580433, at *3 (S.D. Fla. Oct. 23, 2014). In order to demonstrate intentional misconduct for the purposes of recovering punitive damages, a plaintiff must show that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage. *Id.* The Eleventh Circuit has described instances of intentional misconduct as "very rare." *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997).

Plaintiff avers that Defendant Mandara's knowledge of the prior incidents, its failure to evaluate and properly train Ms. Lalnunthari, and its inadequate hiring standards are sufficient to evidence Defendant's intentional failure to warn of the dangers of the massage which he underwent.

Review of maritime cases recognizing a possible claim for punitive damages makes clear that the conduct shown here does not approach the degree of culpability required to maintain such a claim. For example, in *Noon v. Carnival Corp.*, a plaintiff alleged that crew members refused to call an ambulance for a woman suffering from pulmonary arrest, took an oxygen tank away from her, and then prohibited her family from calling 911 while at port. She subsequently died shortly upon making it to shore. No. 18-23181-CIV, 2019 WL 3886517, at *2 (S.D. Fla. Aug. 12, 2019).

"Plaintiff's demand for punitive damages is well taken because Plaintiff alleges that Carnival's non-medical crewmembers had actual knowledge of Mrs. Noon's medical condition and did nothing to aid her." *Id.* at *13.

This case, however, stands on par with *Bonnell,* where the court granted summary judgment for defendant cruise line as to punitive damages. Plaintiff there similarly attempted to prove intentional misconduct with evidence of 263 prior incidents of slip and fall injuries on the same cruise line, on the same type of flooring material. 2014 WL 12580433, at *4. The court found that the evidence of those prior incidents were "not sufficient to show that there was a 'high probability' of injury resulting from" the flooring on which plaintiff had been injured; ultimately the court held that plaintiff had not adduced any evidence showing the cruise line had "actual knowledge" of the wrongfulness of maintaining the floor. *Id.* In so holding, the court reserved ruling on defendant's motion *in limine* to exclude evidence of the prior incidents, recognizing their potential relevance to plaintiff's surviving negligence claim. So too in this case, Plaintiff's proffered evidence of prior injuries sustained is insufficient to show that Mandara had actual knowledge that its massage therapists lacked training and that their inadequate training created a high probability that injury like Plaintiff's would occur.

Plaintiff's cases do not advance his argument that punitive damages may be awarded for the conduct evidenced here. In *Barrous v. BP P.L.C.,*Case No. 10-CV-02944-LHK, 2011 WL 4595205, at *15 (N.D. Cal. Oct. 3, 2011), the court found that under California law, punitive damages may be awarded for unintentional conduct that shows a "complete lack of concern" regarding the harmful potential. *Id*. Despite making this statement, the court there had evidence of defendant's actual knowledge of the specific dangerous condition. The case there involved a gas station, which the owners knew had been leaking for over ten years, that caused damage to the

value of a neighboring property. The court found that a reasonable jury could find that the defendant's inaction for nearly ten years, while actually knowing the whole time of the leak and failing to remediate, could constitute malice. *Id.* Here, however, Plaintiff has failed to adduce evidence demonstrating that Mandara *actually* knew of the harmful propensities. Similarly, in *Willis v. Buffalo Pumps Inc.*, the defendant had a memorandum outlining the specific dangers associated with asbestos exposure, demonstrating knowledge of the harmful propensity, and failed to warn end users of the product. 34 F. Supp. 3d 1117, 1134 (S.D. Cal. July 21, 2014).

There is no comparable evidence here that Defendant Mandara actually knew about the risks associated with the massages it was allowing its massage therapists to perform and intentionally failed to warn its clients about the specific risk. As such, the undersigned recommends that Mandara's Motion for Summary Judgment be GRANTED as to Count VII.

### 2. Defendant NCL's Motion for Summary Judgment

#### a. Plaintiff's Claim for Negligence

NCL moves for summary judgment on Count I of Plaintiff's Amended Complaint, which alleges negligence against NCL on several theories. Initially, NCL challenges the claim to the extent its appears to plead vicarious liability against NCL for Mandara's negligence, accurately citing *Smolnikar v. Royal Caribbean Cruises Ltd.*, for the proposition that it cannot be held vicariously liable for the negligence of an independent contractor (ECF No. 49 at 5). 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011). Count I additionally alleges that NCL was negligent in its selection and retention of Mandara (ECF No. 10 ¶¶ 25-27). NCL avers that it is entitled to summary judgment on these theories of negligence because it reasonably inquired into the fitness of Mandara.

A cruise passenger bringing a claim for negligent selection or retention of a contractor must

prove that 1) the contractor was incompetent or unfit to perform the work, 2) the employer knew or reasonably should have known of the particular incompetence or unfitness, and 3) the incompetence or unfitness was a proximate cause of plaintiff's injury. *See Smolnikar*, 787 F. Supp. 2d at 1318. Negligent selection and retention claims differ only insofar as the time at which the principal is charged with knowledge of the contractor's unfitness. *Id.* at 1318 n.7. Negligent selection claims are premised on the principal's inadequate pre-selection investigation into the contractor's background, while negligent retention claims are premised on the principal's failure to investigate or terminate the contractor when, during the course of the contractor's employment, the principal was aware or should have been aware that the contractor was unfit. *Id.*

Defendant NCL's Motion challenges the second element, advancing evidence to demonstrate its absence of notice of the alleged unfitness of Mandara: Mandara is globally recognized as a leader in the spa industry; it is considered the "gold standard" in the spa industry; other cruise lines use Mandara; and Mandara and NCL have had a good working relationship for 15 years. Dep. of Caridad Bergnes (ECF No. 49-1 at 17). NCL argues this evidence is sufficient to entitle it to summary judgment, citing *Dawsey v. Carnival Corp.* and *Wolf v. Celebrity Cruises, Inc.*, for the proposition that summary judgment may be granted on a negligent selection or retention claim if the employer makes the requisite evidentiary showing and the plaintiff offers only speculative theories or evidence-free allegations. No. 16-23939-CIV, 2018 WL 5251850, at *9 (S.D. Fla. Oct. 22, 2018); 683 F. App'x 786, 796 (11th Cir. 2017). In the cases cited, the courts respectively granted summary judgment noting the absence of evidence offered to create a genuine disputed fact. Specifically, the court in *Dawsey* noted that in opposition to the motion, plaintiff submitted no expert testimony on industry standards, no specific evidence of prior incidents, and simply argued that the cruise line was required to uncover the number of claims and which spa

service generated a claim. The court disagreed, finding that the cruise line did not know and did not have an affirmative duty to ask about the number of complaints that had been made about the spa concessionaire. 2018 WL 5251850, at *9. By contrast, the evidence adduced here demonstrates that NCL was informed about the complaints made against Defendant Mandara and identified by Plaintiff (discussed above). Defendant NCL maintains an onboard database system it calls "IssuTrax," which memorializes, among other things, passenger contact with guest relations (ECF No. 74-3). IssuTrax allowed employees to log, store, and manage complaints made while on ship, including complaints by passengers about the Mandara Spa. Specifically, the complaint by Mr. Romano in December 2017 that he received a massage that aggravated a bulging disk was reported through IssuTrax (ECF No. 74-3 at 4).

Plaintiff has adduced sufficient evidence to create a materially disputed issue on negligent retention. However, Plaintiff has not adduced any evidence to demonstrate that when Defendant NCL selected Defendant Mandara, it was then on notice or should have been on notice of its unfitness. Because Plaintiff has not adduced any sufficient evidence to create a materially disputed issue that NCL was negligent on selecting Mandara, summary judgment should be granted on that theory of Count I but denied on the theory of negligent retention.

### b. Plaintiff's Claim for Direct Negligence for Failure to Warn

Plaintiff alleges in Count II that NCL had a duty to warn him about the potential for spine or neck injury from the massage he was to undergo. Defendant seeks summary judgment on this Count, again challenging the absence of evidence that it had notice about the risk presented by Ms. Lalnunthari specifically. Plaintiff's claim is not so narrow.

As described above, Plaintiff has adduced evidence that NCL had notice that massages performed by Mandara presented a risk of neck and spinal injuries through its IssuTrax database

and in lawsuits filed prior to Plaintiff's incident. Whether this evidence is sufficient to put NCL on notice of the specific risk here is properly decided by a jury, but is sufficient to survive the motion for summary judgment.

### c. Plaintiff's Claim for Intentional Failure to Warn

Defendant NCL moves for summary judgment on Count III, which alleges that NCL intentionally failed to warn him about the risk of injury attendant to the massage. The claim is substantially identical to Plaintiff's claim for intentional failure to warn alleged against Defendant Mandara, and indeed the arguments advanced by the Parties for and against summary judgment are identical to those considered above with respect to Defendant Mandara. Plaintiff's claim fares no better with respect to Defendant NCL.

The evidence advanced here to support the claim for intentional conduct overlaps substantially with that advanced against Defendant Mandara. Specifically, Plaintiff relies heavily on the evidence of prior injuries reported to NCL, described above, to prove his claims against both Defendants; however, the evidence that Mandara may have failed to verify credentials and references of its massage therapist, or to adequately train its massage therapists, is not even argued to be attributable to NCL. The evidence advanced by Plaintiff against Defendant NCL fails to reach the standard articulated for an award of punitive damages. As such, I recommend that Defendant NCL's Motion for Summary Judgment with regards to Count III be granted.

### 3. Plaintiff's Claim of Vicarious Liability Based Upon Apparent Agency

Plaintiff and Defendant cross move for summary judgment on Plaintiff's claim of apparent agency as to NCL (Count IV). While Count II in Plaintiff's Amended Complaint is captioned "Vicarious Liability Against NCL," Plaintiff's claim asserts that Mandara was the apparent agent of NCL. Maritime law recognizes the principles of agency. *See Archer v. Trans/American Services,*

*Ltd.*, 834 F.2d 1570, 1573 (11th Cir. 1988). In order to establish an agency relationship, Plaintiff must show that: 1) NCL made some manifestation that caused him to believe that Mandara had the authority to act for the benefit of NCL, 2) that such belief was reasonable, and that 3) he reasonably acted on such belief. *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014).

Defendant NCL advances evidence of two "disclaimers" it contends defeats any claim of apparent agency. First, the ticket contract, which it claims all guests must agree to prior to boarding the vessel, states:

> **(b) Other Independent Contractors:** The Guest recognizes that the persons providing other personal services offered on the vessels, including but not limited to, hairdressers, manicurists, personal trainers, and/or massage therapists are independent contractors who work directly for the Guest, and that the Carrier shall not be held liable for any loss or injury arising from the performance of such services.

ECF 49-3.[3] Defendant NCL contends that the Spa Intake Form also disclaims agency because it identifies the spa owner not as NCL but as "Mandara Spa LLC." The form does not disclose that the spa is <u>operated</u> by Mandara, or that it is <u>not</u> operated by NCL. It does require the client to initial acknowledgement that he accepts the services at his own risk and expense and without liability or responsibility to the cruise line. *See* ECF 49-4. Plaintiff signed and initialed the form.

Defendant argues that Plaintiff's alleged reliance was unreasonable as a matter of law, citing *Wajnstat v. Oceania Cruises, Inc.*, *Peterson v. Celebrity Cruises, Inc.*, and *Hajtman v. NCL (Bahamas), Ltd.*,[4] for the proposition that as a matter of law, multiple disclaimers are sufficient to find Plaintiff's claim of a reasonable belief of apparent agency unreasonable. However, these cases

---

[3] Plaintiff disputes that he ever received or signed such a contract. In Plaintiff's deposition he testified that he never signed such a contract and that his girlfriend handled all of the tickets. Pl.'s Dep. (ECF No. 51-4 at 94). Additionally, in a request for production, Plaintiff requested that Defendant NCL produce his signed ticket contract and it instead pointed to an exemplar on its website. *See* ECF No. 54 at 20.
[4] 2011 WL 465340 (S.D. Fla. Feb. 4, 2011); 753 F. Supp. 2d 1245 (S.D. Fla. 2010); 526 F. Supp. 2d 1324 (S.D. Fla. 2007).

were later abrogated by *Franza*, which found that cruise lines could be held liable for the negligent acts of onboard medical staff under a theory of apparent agency. *See Franza*, 772 F.3d at 1250 n.18.

Defendant argues that courts in this district have routinely granted summary judgment on this issue in similar cases involving shore excursion tour operators, where express disclaimers placed the plaintiff on notice that 1) the cruise line was not the owner operator of the excursion; 2) that all excursions were owned and operated by independent contractors; and 3) that the cruise line would not be responsible for the negligent acts of third parties. *See Chimene v. Royal Caribbean Cruises, Ltd.*, No. 16-23775-CV, 2017 WL 8794706, at *7 (S.D. Fla. Nov. 14, 2017), *report and recommendation adopted*, No. 16-23775-CIV, 2018 WL 1795799 (S.D. Fla. Jan. 4, 2018).

Defendant compares this case to *Chimene*, which held that it was unreasonable for the plaintiff to believe that the excursion operator was an agent of the cruise line upon evidence that the plaintiff was presented with four unambiguous disclaimers that advised passengers that *all* shore excursions were provided through independent contractors who "are not acting as agents or representatives of" the cruise line; the cruise line did not "undertake to supervise or control such independent contractors or their employees;" and made no representation regarding their suitability or safety. *Id.* at *8. The defendant's marketing of shore excursions similarly and explicitly disclosed that shore excursions are operated by independent third parties, and the shore excursion operator similarly presented a waiver to the plaintiff that expressly identified its name as the tour operator, not the cruise line. *Id.*

The ticket advanced by Defendant requires the ticket holder to acknowledge that "other personal services offered on the vessels, including but not limited to…massage therapists" are

independent contractors. In *Chimene*, one of the disclaimers, like NCL's, generally disavowed liability for acts of independent contractors. However, nothing in *Chimene* suggests that this would suffice to decide agency as a matter of law; the court there had four different writings warning plaintiff that the shore excursion was not operated by the cruise line. *Chimene* also presented a question arising from an off-vessel excursion; it stands in contrast here to services offered and advertised on the cruise ship, by persons wearing NCL branded name tags. A jury will have to decide whether Plaintiff's reliance on the apparent agency was reasonable.

Therefore, the undersigned recommends that both Plaintiff's Motion for Partial Summary Judgment on the Issue of Apparent Agency and Defendant NCL's Motion for Summary Judgment as to the issue of apparent agency be DENIED.

## III.   CONCLUSION

For the foregoing reasons, the undersigned recommends that:

1. Defendant Mandara's Motion for Summary Judgment (ECF No. 50) be **GRANTED in part and DENIED in part** as follows:

    a. Defendant Mandara's Motion be **GRANTED** as to Count VII; judgment be entered for Defendant Mandara and against Plaintiff and it be dismissed with prejudice.

    b. Defendant Mandara's Motion be **DENIED** as to Count V and VI of the Amended Complaint.

2. Defendant NCL's Motion for Summary Judgment (ECF No. 49) be **GRANTED in part and DENIED in part** as follows:

    a. Defendant NCL's Motion be **GRANTED** as to Count III; judgment be entered for Defendant NCL and against Plaintiff and it be dismissed with prejudice.

       b.   Defendant NCL's Motion be **DENIED** as to Counts I, II and IV of the Amended Complaint.

3.   Plaintiff's Motion for Partial Summary Judgment the Claim of Apparent Agency (ECF No. 51) be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), written objections, if any, must be filed with the Honorable Federico A. Moreno, United States District Judge by no later than **March 16, 2020**. Responses thereto must be filed no later than **March 23, 2020**. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 5th day of February, 2020.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

Cc:
The Honorable Federico A. Moreno
Counsel of Record